**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Aaron C. Schepler, SBN 019985
Attorneys for Defendant Vertrue Incorporated

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Peter Strojnik, an individual, | No. CV-08-1355-PHX-ROS |
|---|---|
| Plaintiff, | |
| v. | **MOTION TO DISMISS** |
| Vertrue Incorporated, a Delaware corporation, | |
| Defendant. | |

## I.   INTRODUCTION

Peter Strojnik, one of Arizona's most notorious professional litigants, is at it again. An attorney and self-appointed crusader against commercial e-mail, or "spam," Strojnik has selected defendant Vertrue Incorporated ("Vertrue") to be the latest target of his campaign. In his complaint, Strojnik alleges that he received a single, "unsolicited" e-mail from Vertrue. This single e-mail transmission, which clearly was not unsolicited, is the entire basis for his complaint, for which he hopes to be paid thousands of dollars in statutory damages, punitive damages, and attorneys' fees (even though he is representing himself).

His complaint should be dismissed under Rule 12(b)(6). As an initial matter, even though Strojnik's complaint purportedly raises only state-law claims, his claim under the Arizona Commercial E-Mail Act ("ACEMA") A.R.S. § 44-1372, *et seq.*, is

PHX 328,325,236v2

completely preempted by the federal CAN-SPAM Act (the "Act"). The Act "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages . . . ." 15 U.S.C. § 7707. In other words, by enacting 15 U.S.C. § 7707, Congress has declared the Act to be the sole and exclusive avenue of relief for claims arising from the use of commercial e-mail. That being the case, the Act not only preempts ACEMA, it also **displaces** the cause of action completely. *See Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 67, 107 S. Ct. 1542, 1548 (1987).[1] Therefore, Strojnik's claim must be evaluated as though he had actually pled a CAN-SPAM Act claim.

Strojnik's complaint fails to state a CAN-SPAM Act claim for two reasons. First, he lacks standing. The Act does not create a private right of action for **anyone** who claims to have been momentarily inconvenienced by unwanted e-mail messages. The only private parties allowed to enforce the Act are "providers of Internet access service," which Strojnik plainly is not. Second, even if Strojnik were a proper plaintiff, nothing he alleges in the complaint gives rise to liability under the Act. The complaint merely alleges that he received a single e-mail, which he says was unsolicited – nothing more. The complaint does **not** allege that there was anything untruthful or misleading in the e-mail header or the subject line, which are the only practices that the CAN-SPAM Act forbids. Again, the Act does not allow someone to file a lawsuit merely because he or she received an e-mail they didn't want.

His Arizona Consumer Fraud Act claim fares no better. In order to state a claim, Strojnik must allege a false promise or misrepresentation made in connection with the

---

[1] As a result, "this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, 'arise[s] under the . . . laws . . . of the United States,' 28 U.S.C. § 1331, and is removable to federal court . . . ." *Metropolitan Life Ins. Co.*, 481 U.S. at 67, 107 S. Ct. at 1548 (alterations in original).

sale or advertisement of merchandise and damages. Strojnik fails to allege either. Again, the entire basis for his complaint is the single e-mail he received from Vertrue last month. That e-mail did not contain any false promises or representations, and Strojnik does not allege otherwise. Likewise, Strojnik's allegation that he suffered the momentary inconvenience of reading a supposed unwanted e-mail is likewise not enough to establish a plausible claim for damages.

For these reasons and the others discussed below, Strojnik's complaint fails to state a claim upon which relief may be granted. The Court should therefore dismiss it under Rule 12(b)(6).

## II. BACKGROUND

In his complaint, Strojnik alleges that he received exactly one e-mail from Vertrue, which he claims was "unsolicited."[2] Strojnik, of course, is wrong – he signed up for a free, seven-day trial of a product called *Family Safety Report*, which allows users to find out whether there are sex offenders living in their neighborhood. In order to enroll in the program, Strojnik was required to enter his e-mail address **twice**, and then click on a button labeled **"YES"** after reviewing the terms of the program, all of which he did. The e-mail he received was simply a welcome message, which provided a link to the service and other information on *Family Safety Report*. Thus, the message was not "unsolicited" under any conceivable definition of that word.[3]

In any event, exactly **one day** after receiving the e-mail, and without making any effort whatsoever to contact Vertrue to resolve the situation, Strojnik filed this action in Justice Court.[4] In it, he claims to have suffered "damage by virtue of loss of time and

---

[2] Complaint, ¶¶ 12-13 & Exhibit 1 to the Complaint.
[3] Strojnik also signed up for a program called *Privacy Matters Identity*," but apparently did not receive an e-mail related to that program. Or, if he did, he is not alleging that the receipt of that e-mail is somehow actionable.
[4] Encanto Justice Court Case No. CC2008131925.

3

the use of the computer and other damages . . . ."[5]  Incredibly, he seeks not only statutory damages, but also punitive damages against Vertrue.[6]  Vertrue should be punished, he says, because, in sending the e-mail, the company was "motivated by economic self interest without any regard for the rights of Plaintiff."[7]  He also requests an award of attorneys' fees, even though he is self-represented.[8]

### III. ANALYSIS

#### A. Rule 12(b)(6) standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide the "grounds" of his "entitle[ment] to relief [which] requires more than labels and conclusions. . . ."  Indeed, "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and, although these allegations need not create "probable" grounds for a claim, they must create "plausible" grounds. *Id*.  Strojnik's complaint falls well short of meeting the *Twombly* plausibility standard in several key respects.

#### B. The Complaint fails to state a CAN-SPAM Act claim.

"Spam" was originally an acronym that stood for "short pointless annoying messages," but the term is now used primarily to describe unsolicited commercial e-mail.[9]  The Controlling the Assault of Non-Solicited Pornography and Marketing Act of

---

[5] Complaint ¶ 14.
[6] Complaint ¶ 17.
[7] Complaint ¶ 17.
[8] Complaint ¶¶ 16, 22.
[9] *See* http://en.wikipedia.org/wiki/Spam_(electronic) (last visited Jul. 29, 2008). "Spam" can also refer to other types of widely broadcasted commercial messages. *See id*. ("Spamming is the abuse of electronic messaging systems to indiscriminately send unsolicited bulk messages.  While the most widely recognized form of spam is e-mail spam, the term is applied to similar abuses in other media: instant messaging spam, Usenet newsgroup spam, Web search engine spam, spam in blogs, wiki spam, mobile

2003 (or "CAN-SPAM Act"), 15 U.S.C. § 7701, *et seq.*, establishes requirements for those who send commercial e-mail. In passing the CAN-SPAM Act, Congress recognized spam as a "serious and pervasive problem," but the statute "does not impose liability at the mere drop of a hat." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 350 (4th Cir. 2006). Rather, it creates a "limited federal cause of action for [sending] materially false e-mails . . . ." *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, *3 (C.D. Cal. May 23, 2007). Specifically, the Act made it actionable for a person to send e-mails with materially false or materially misleading information in the header, or misleading information in the subject line. *Omega World Travel, Inc.*, 469 F.3d at 355 (citing 15 U.S.C. § 7704(a)(1) & (a)(2)).

But the only **private** parties to whom Congress granted a right of action under the CAN-SPAM Act are "providers of Internet access service." *See* 15 U.S.C. § 7706(g); *Omega World Travel, Inc.*, 469 F.3d at 357 n.3; *Facebook, Inc. v. ConnectU, L.L.C.*, 489 F. Supp.2d 1087, 1094 (N.D. Cal. 2007). The term "internet access service" is defined as "a service that enables users to access content, information, electronic mail, or other services offered over the Internet . . . ." 15 U.S.C. § 7702 (referring the reader to the definition in 47 U.S.C. § 321(e)(4)); *Omega World Travel, Inc.*, 469 F.3d at 357 n.3. Otherwise, the statute was intended as an enforcement tool for various federal agencies, such as the Federal Trade Commission, and state attorneys-general. *See* 15 U.S.C. § 7706(a), (b), (d) & (f)). There is no private right of action for individuals.

In this case, it is obvious that Strojnik cannot state a claim under the CAN-SPAM Act. For starters, he is not a "provider of Internet access service." He's an attorney. If he is an Internet access service provider, he has failed to allege that fact in

---

phone messaging spam, Internet forum spam and junk fax transmissions.")

his complaint. That omission, in and of itself, makes his claim defective. Further, Strojnik has not alleged that there was anything materially misleading in the header or subject line of the message he received. The Act defines a false or materially misleading header to include "information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations . . . ." *Facebook, Inc.*, 489 F. Supp.2d at 1094-95. The Act defines a misleading subject line as one that "would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message . . . ." *Omega World Travel, Inc.*, 469 F.3d at 355 (quoting 15 U.S.C. § 7704(a)(2)). All that Strojnik has alleged here is that he received an e-mail that he didn't want. He does not allege that the **content** of the e-mail was false or misleading under the standards set forth in the Act. To the extent Strojnik's complaint attempts to plead a CAN-SPAM Act claim, it is deficient as a matter of law.

### C.  The Complaint fails to state a consumer-fraud claim.

Count II of Strojnik's complaint is for an alleged violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq*. This claim is likewise defective. The statute generally prohibits deceptive acts and practices in connection with the sale of services or merchandise:

> [t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522.

"The elements of a private cause of action for consumer fraud are 'a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury.'" *Nahom v. Blue Cross & Blue Shield, Inc.*, 885 P.2d 1113, 1124 (Ariz. Ct. App. 1994) (quoting *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979)). Here, Strojnik's complaint does not allege any facts that state a plausible basis for his consumer-fraud claim. He alleges that he received an unwanted e-mail message – period. There are no allegations that Vertrue made a false promise or representation in connection with the sale or advertisement of any goods or services. Thus, his Consumer Fraud Act allegations are plainly deficient.

Further, his damages allegations fail the *Twombly* plausibility standard. Strojnik alleges that he suffered "damage by virtue of loss of time and the use of the computer and other damages" because he "received the electronic mail, opened the electronic mail, reviewed the electronic mail, and otherwise spent time dealing with the electronic mail."[10] The notion that Strojnik somehow lost "time" and the "use of his computer" to any substantial degree because he received one unwanted e-mail is ludicrous. It would have consumed approximately five seconds of his day to determine what the message was and to delete it. Under any objective standard, Strojnik has not plausibly alleged that he suffered damages as a result of receiving an e-mail from Vertrue. His consumer-fraud claim should be dismissed on that basis as well.

### D.   Strojnik is not entitled to punitive damages.

Strojnik has likewise failed to allege the kind of reprehensible conduct warranting an award of punitive damages. Thus, even if the Court does not dismiss his complaint, it should at least dismiss his claim for punitive damages.

---

[10] Complaint ¶¶ 12, 21.

Punitive damages are never awarded for run-of-the-mill torts, even when they are intentionally committed. Rather, punitive damages are awarded only when the defendant acts with an "evil mind":

> In deciding whether punitive damages are awardable, the inquiry should be focused upon the wrongdoer's mental state. To recover punitive damages something more is required over and above the "mere commission of a tort." The wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim. **It is only when the wrongdoer should be consciously aware of the evil of his actions, of the spitefulness of his motives or that his conduct is so outrageous, oppressive or intolerable in that it creates a substantial risk of tremendous harm to others that the evil mind required for the imposition of punitive damages may be found.**

*Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675 (Ariz. 1986) (emphasis added) (citations omitted). In this case, the complaint fails to allege conduct that even begins to meet this standard. Vertrue sent Strojnik an e-mail. There was nothing "evil," "outrageous," "oppressive," or "intolerable" about this act, nor did it create a "risk of tremendous harm" (or any harm) to Strojnik. His punitive-damages claim should therefore be dismissed.

### E. Strojnik is not entitled to attorneys' fees.

Strojnik's claim for attorneys' fees also should be dismissed. because Strojnik – who is an attorney – is not paying anyone to represent him. It is well settled in Arizona that parties must have a "genuine financial obligation" to pay fees before fees can be awarded to them. *Lisa v. Strom*, 904 P.2d 1239, 1243 (Ariz. Ct. App. 1995) ("[W]e believe that public policy considerations, including the integrity of the judicial system and the public's perception of it, require that an additional, indispensable requirement to an award of attorneys' fees . . . be a genuine financial obligation on the part of the

litigants to pay any such fees."). Since Strojnik is self-represented, he is not entitled to an award of fees, even if he prevails in this case.

IV. **CONCLUSION**

Strojnik's complaint fails to state a claim under either the CAN-SPAM Act or the Arizona Consumer Fraud Act, and should be dismissed. Even if the Court does not dismiss the complaint in its entirety, his claims for punitive damages and attorneys' fees should be dismissed because they, too, fall short.

RESPECTFULLY SUBMITTED this 30th day of July, 2008.

                     GREENBERG TRAURIG, LLP


By: /s/ Aaron C. Schepler
      Aaron C. Schepler
      Attorneys for Defendant Vertrue Incorporated

CERTIFICATE OF SERVICE

☒ I hereby certify that on July 30, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

☐ I hereby certify that on , I served the attached document by United States Mail on the following, who are not registered participants of the CM/ECF System:

Peter Strojnik
3030 N. Central Ave., Ste. 1401
Phoenix, AZ  85012
Plaintiff In Pro Per


/s      Marie E. Sanchez

10